IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES THOMPSON,  )
    Petitioner,  )    Civil Action No. 16-246 Erie
      )
v.  )
      )    Magistrate Judge Susan Paradise Baxter
WARDEN RECKTENWALD,  )
    Respondent.  )

## **OPINION**[1]

Presently before the Court is a petition for a writ of habeas corpus filed by federal prisoner James Thompson (the "Petitioner"), pursuant to 28 U.S.C. § 2241. He contends that the Bureau of Prisons (the "Bureau" or the "BOP"), which is the agency responsible for implementing and applying federal law concerning the computation of federal sentences, see, e.g., United States v. Wilson, 503 U.S. 329 (1992), erred in computing his sentence. For the reasons set forth below, the petition is denied.

**I.**

**A.**    **Relevant Background**

On April 13, 2012, the Petitioner was arrested by members of the Susquehanna Township Police Department. (Resp's Ex. No. 2(a) at 1). He was charged with state drug-related offenses in the Court of Common Pleas of Dauphin County, Pennsylvania. (Id.) At the time of his arrest, the Petitioner was on parole and was being supervised by of the Pennsylvania Board of Probation and Parole (the "Parole

---

[1]    In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

1

Board"). (Resp's Ex. 2(a) at 1-2; Resp's Ex. 2(c)). After his arrest, he was incarcerated in the Dauphin County Prison.[2] (See Resp's Ex. 2(d)).

At this time, the Petitioner was in the "primary custody" (sometimes referred to as "primary jurisdiction") of the Commonwealth of Pennsylvania. The "primary custody" doctrine developed to provide different sovereigns (in this case the state and the federal governments) with an orderly method by which to prosecute and incarcerate an individual who has violated each sovereign's laws. Ponzi v. Fessenden, 258 U.S. 254 (1922). See, e.g., Bowman v. Wilson, 672 F.2d 1145, 1153-54 (3d Cir. 1982); George v. Longley, 463 F.App'x 136, 138 n.4 (3d Cir. 2012) (per curiam); Elwell v. Fisher, 716 F.3d 477 (8th Cir. 2013). In relevant part, the doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction, regardless of the chronological order of sentence imposition. See, e.g., Bowman, 672 F.2d at 1153-54. Primary custody remains vested in the sovereign that first arrests the individual until its sentence expires and it releases the inmate, or until it relinquishes its priority through some other act, such as granting bail, dismissing the charges, or releasing the individual on parole. See, e.g., George, 463 F.App'x at 138 n.4

On November 28, 2012, the grand jury for the Middle District of Pennsylvania returned a five-count Superseding Indictment against the Petitioner and eighteen other defendants.[3] (Resp's Ex. 4). The first count of the Superseding Indictment alleged that from December of 2007 and continuing until

---

[2] As the Respondent explains, court records reflect that although the Petitioner's bail with respect to the state charges was set on April 13, 2012, he was not released from custody because the Parole Board had filed a parole detainer/warrant against him. (ECF No. 10 at 3 n.1; Resp's Ex. 2(c)).

[3] The Petitioner was not named as a defendant in the original Indictment, which was returned on July 25, 2012. (Resp's. Ex. 3).

2

August 27, 2012, the Petitioner and the defendants violated 21 U.S.C. § 846 by conspiring to distribute more than five kilograms of cocaine and more than 280 grams of crack. (Id. at 1-2). The Petitioner and the others were charged at Count Two with aiding and abetting in the distribution of more than five kilograms of cocaine and more than 280 grams of crack in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (Id. at 3-4). The Petitioner was also charged at Count Four with participating in a money laundering conspiracy in contravention of 18 U.S.C. § 1956(h). (Id. at 5-6).

On December 3, 2012, the United States District Court for the Middle District of Pennsylvania issued a writ of habeas corpus *ad prosequendum* directing the warden of the Dauphin County Prison to produce the Petitioner for prosecution in federal court. (Resp's Ex. 2(d)). Pursuant to the writ's authority, the Petitioner was removed from the Dauphin County Prison on December 11, 2012,[4] April 7, 2014, and September 16, 2014, by the United States Marshals Service and transported to and from federal court for judicial proceedings. (Resp's Ex. 2(e)). The Petitioner pleaded guilty to violating 21 U.S.C. § 846, conspiracy to distribute cocaine and on September 16, 2014, the District Court sentenced him to a 96-month term of imprisonment. (Resp's Ex. 2(f)). The District Court was silent with respect to the relationship of the 96-month sentence to any other sentence to which the Petitioner was, or would be, subject. (Id.)

At the conclusion of each of the District Court's proceedings, the Petitioner was returned to Dauphin County Prison in satisfaction of the federal writ. Although the Petitioner was temporarily transferred to the physical custody of federal authorities on each of these occasions, the Commonwealth maintained primary custody over him. That is because a prisoner detained pursuant to a writ of habeas corpus *ad prosequendum* remains in the primary custody of the sending sovereign unless and until it

---

[4] The Petitioner was arrested on his federal criminal charges at the Dauphin County Prison on December 11, 2012. (Resp's Ex. 2(e)).

relinquishes jurisdiction over him. See, e.g., Ruggiano v. Reish, 307 F.3d 121, 125 n.1 (3d Cir. 2002), superseded on other grounds by U.S.S.G. § 5G1.3(c) app. note 3(E) (2003). See also Elwell, 716 F.3d at 482 ("When the United States obtained physical custody of Elwell based upon the writ of habeas corpus ad prosequendum, the transfer of physical control over Elwell's custody from Iowa to the United States did not terminate Iowa's primary jurisdiction.") The receiving sovereign – in this case, the federal government – is considered simply to be "borrowing" the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and/or sentencing him. Id. After the District Court sentenced the Petitioner on September 16, 2014, and the United States Marshals Service returned him to Dauphin County Prison for the final time, the federal Judgment was filed with state authorities as a detainer. (Resp's Ex. 2(e)).

On October 31, 2014, the Petitioner's state parole was revoked and the Parole Board recalculated his maximum sentence to expire on January 28, 2016. (Resp's Exs. 2(c) and 2(g)). On December 8, 2014, the state charges that had been filed by the Susquehanna Township Police Department were nolle prossed (Resp's Exs. 2(a), 2(b)), and the Petitioner was transferred to a state correctional institution to serve his parole-violator term. (Resp's. Exs. 2(c), 2(e), 2(i)). He completed service of that term on January 28, 2016, and on that date state authorities released him to the federal detainer.

Pursuant to 18 U.S.C. § 3584(a), the BOP has calculated the Petitioner's federal sentence as consecutive to his state sentence. This means that it has refused to give him a retroactive concurrent designation (discussed below), which would have allowed the state prison to be the place where he began service of his federal sentence. (Resp's Ex. 2(m); Resp's Ex. 2, ¶ 16). Pursuant to 18 U.S.C. § 3585(a), the BOP has calculated the Petitioner's federal sentence to have commenced on the day the state authorities released him to the federal detainer (on January 28, 2016). (Resp's Ex. 2(p) at 3; Resp's Ex. 2, ¶ 18). The BOP also has determined that the Petitioner is entitled to 688 days of prior custody

4

credit pursuant to 18 U.S.C. § 3585(b), to account for time served in official custody that was not credited against his state sentence. Specifically, he received sentencing credit for time served from December 12, 2012, through December 30, 2014. (Id.; Resp's Ex. 2, ¶¶ 18-19).

The Petitioner challenged the BOP's calculation of his federal sentence through the BOP's administrative remedy process. When he did not receive the relief he sought he filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 4). He contends that he is entitled to additional credit against his federal sentence. The Respondent filed the answer (ECF No. 10), and the Petitioner filed a reply (ECF No. 19).

**B.**     **Subject Matter Jurisdiction**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). 28 U.S.C. § 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence," McGee v. Martinez, 627 F.3d 933, 935 (3d Cir. 2010), such as, for example, the way in which the BOP is computing his sentence. See, e.g., Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990). Such petitions are filed in the federal court of the judicial district where the federal prisoner is incarcerated. Thus, this Court has jurisdiction under § 2241 to consider the Petitioner's claim that the BOP erred in computing his sentence. A federal habeas court may only extend a writ of habeas corpus to a federal inmate if he demonstrates that "[h]e is in custody in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2241(c)(3).

5

**C.   Discussion**

The following statutes are relevant to the evaluation of the Petitioner's contention that the BOP erred in computing his federal sentence: 18 U.S.C. § 3584(a), which governs a federal sentencing court's authority to order that a federal sentence be served concurrently with a state sentence; 18 U.S.C. § 3585(a), which governs the date upon which a federal sentence commences; and 18 U.S.C. § 3585(b), which governs the amount of prior custody credit that an inmate may receive. The BOP's policies regarding sentence computation are set forth in Program Statement 5880.28, Sentence Computation Manual ("PS 5880.28"). Also relevant to this case is Program Statement 5160.05, Designation of State Institution for Service of Federal Sentence ("PS 5160.05").[5]

**1.   The determination of whether a federal sentence is concurrent with, or consecutive to, a state sentence**

**(a)  Statutory and policy background**

In determining whether the Petitioner is entitled to any habeas relief, the Court must first examine whether the BOP violated federal law in computing his federal sentence as consecutive to his state sentences. 18 U.S.C. § 3584(a) provides, in relevant part:

> [I]f a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively.… *Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently*.

(Emphasis added). See also Sester v. United States, 566 U.S. 231 (2013) (§ 3584(a) authorizes federal sentencing courts to direct sentences to run concurrently or consecutively with other sentences, whether such sentences are imposed or have yet to be imposed).

---

[5] The BOP policies at issue in this case are not published in any federal regulation, and thus are not subject to public notice and comment before adoption. Although they are not entitled to the deference described in Chevron U.S.A. v. National Resources Defense Council, 467 U.S. 837 (1984), they are entitled to "some deference" from this Court so long as they set forth "a permissible construction of" the statutes at issue. Blood v. Bledsoe, 648 F.3d 203, 207-08 (3d Cir. 2011) (per curiam) (citing Reno v. Koray, 515 U.S. 50, 61 (1995)), cert. denied, 132 S.Ct. 1068 (2012).

In applying § 3584(a), the BOP presumes that federal and state sentences are to be served consecutively unless the federal sentencing court orders that the sentences are to be served concurrently. See PS 5880.28, Chapt. 1, Pages 31-33; PS 5160.05, Pages 2-7. In this case, the BOP did not consider the Petitioner's federal sentence to run concurrently with his state sentence *because the District Court had not so ordered*. The BOP is charged with carrying out the sentence that the federal court imposed, not the sentence the state court imposed. Barden, 921 F.2d at 480-84.

Importantly, however, the BOP considered, as it must under Barden and its own policies, whether it should exercise its discretion and grant the Petitioner a retroactive concurrent designation pursuant to § 3621(b). In Barden, the United States Court of Appeals for the Third Circuit discussed the BOP's authority to effectuate the service of concurrent federal and state sentences in circumstances when the intent of the federal sentencing court or the goals of the criminal justice system would make the exercise of that authority appropriate. See also PS 5160.05, Pages 5-7. An inmate is permitted to request that the BOP retroactively designate the state institution as the correctional institution where he began service of his federal sentence pursuant to its authority under 18 U.S.C. § 3621(b), which in effect amounts to the imposition of a retroactive concurrent federal sentence. Barden, 921 F.2d at 478-83; PS 5160.05, Pages 5-7.

Although the BOP must consider the inmate's request for concurrent service of sentences, it is not obligated to grant the request. Id. at 478 n.4 ("We recognize that neither the federal courts nor the Bureau are bound in any way by the state court's direction that the state and federal sentences run concurrently."); PS 5160.05, Page 6 ("there is no obligation under Barden for the Bureau to grant the request by designating a state institution retroactively as the place to serve the federal sentence.") In making its decision, the BOP will review the federal sentencing court's Judgment and Commitment

7

Order, the state sentence data records, and any other pertinent information relating to the federal and state sentences. PS 5160.05, Pages 5-7.

### (b) The BOP did not abuse its discretion in declining to grant the Petitioner a retroactive concurrent designation

After the Petitioner challenged the way the BOP was calculating his federal sentence, the BOP wrote a letter to the District Court judge, dated June 28, 2016, explaining:

> On September 16, 2014, the Court sentenced [the Petitioner] to a 96-month term of confinement for Conspiracy to Manufacture, Distribute, and Possess with Intent to Manufacture and Distribute Cocaine Hydrochloride. At the time the federal sentence was imposed, [the Petitioner] was under the primary jurisdiction of state authorities in Pennsylvania and in federal custody pursuant to a writ. The respective Judgment in a Criminal Case was silent regarding any relationship with the forthcoming action in the state court. Following sentencing, [the Petitioner] was returned to state authorities and the U.S. District Court judgment was filed as a detainer.
>
> On October 31, 2014, [the Petitioner's] parole was revoked and he was continued in custody in service of his original 3-year to 6-year term of confinement for Possession with Intent to Deliver a Controlled Substance, Possession of Drug Paraphernalia, Possession of Instrument of Crime, and Delivery of a Controlled Substance. The Court did not address how the state terms would be served in relation to the federal sentence.
>
> On January 28, 2016, [the Petitioner's] state sentence was satisfied and he was released to the federal detainer to commence the service of his federal sentence as provided by Title 18 U.S.C. § 3585(a).
>
> [The Petitioner] has requested that his federal sentence be served concurrently with the state term, which would be accomplished by the Bureau of Prisons (Bureau) designating the state institution for service of his federal sentence. Such action would thereby reduce the total amount of time spent in custody. In Setser v. United States, __ U.S. __ , 132 S.Ct. 1463, 192 L.Ed.2nd 455 (2012), the United States Supreme Court held that the authority to order a federal sentence concurrent of consecutive with any other sentence rests with the federal sentencing court.
>
> Such a retroactive designation is made if the federal sentencing Court indicates the federal term is to be concurrent with the state term, or if the federal sentencing Court does not state its intention, such designation may be completed after the review of all factors under Title 18 U.S.C. § 3621(b).
>
> The Bureau strives to administer sentences in accordance with federal statutes, Bureau policy, and the intent of the sentencing court. It is the Bureau's preference that the

8

federal sentencing court state its position with respect to a retroactive designation. If, after 60 days, a response has not been received from the Court, the Bureau will complete its review and make a decision regarding this case.

Should the Court indicate the sentence is to run concurrent with the state term, the Bureau will commence the sentence in the above judgment on September 16, 2014, the date of imposition, which will result in [the Petitioner's] release from custody on or about April 2, 2019. Should the Court indicate the term is to run consecutive to the state term, he will continue to a current projected release date of February 27, 2021.

(Resp's Ex. 2(k)).

The District Court judge responded to the BOP in a letter dated June 28, 2016. He wrote that he was "satisfied to allow the Bureau to determine the issue outlined in your letter." (Resp's Ex. 2(l)).

The BOP then conducted a Barden review to determine whether to grant the Petitioner a retroactive concurrent designation. The five factors set for in § 3621(b) were considered with respect to the Petitioner's particular circumstances. Those factors are: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted or recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission. After its evaluation, the BOP determined that the Petitioner was not appropriate for a retroactive designation. (Resp's Ex. 2(m)).

This Court cannot conclude that the BOP's decision was an abuse of its discretion. It was in accordance with the federal sentencing statutes and applicable agency policy, PS 5160.05, Pages 5-7, and there is no basis for this Court to disturb it. See Barden, 921 F.2d at 484.

### 2. Calculation of the date upon which a federal sentence commences

18 U.S.C. § 3585(a) governs the date a federal sentence commences. It provides:

9

> (a) Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a).

The BOP, and not the federal sentencing court, determines the date upon which a federal sentence commences. See, e.g., Ruggiano, 307 F.3d at 126. The BOP will not commence a sentence earlier than the date it is imposed, even if made concurrent with a sentence already being served. PS 5880.28, Chapt. 1, Page 13 ("In no case can a federal sentence of imprisonment commence earlier than the date on which it is imposed."). See, e.g., Rashid v. Quintana, 372 F.App'x 260, 262 (3d Cir. 2010) (per curiam) ("a federal sentence cannot begin to run earlier than on the date on which it is imposed.") (citing Unites States v. Labeille-Soto, 163 F.3d 93, 98 (2d Cir. 1998), which stated: "We see nothing in [§ 3585(a)] to indicate that the court is permitted to order that the sentence be deemed to have commenced on an earlier date. Indeed, the determination of the precise date on which a sentence begins appears to have been intended to be a ministerial decision that depends on the timing of the defendant's arrival at the appropriate place with respect to the sentence that is to be served, and we have held that after a defendant is sentenced, it falls to the BOP, not the district judge, to determine when a sentence is deemed to commence[.]" (internal quotations and brackets omitted)).

When an inmate is only facing service of a federal sentence, the application of § 3585(a) is straightforward. The BOP will designate the inmate to a federal detention facility and it will calculate the federal sentence to have commenced on the date it was imposed. PS 5880.28, Chapt. 1, Page 12. Oftentimes, however, as in the instant case, an inmate is subject to multiple sentences, *e.g.*, at the time his federal sentence is imposed he is or will soon be subject to a state sentence. In that case, the federal and state governments must resolve where and/or in what order the inmate will serve his multiple

10

sentences. As discussed above, at common law the "primary custody" doctrine developed to assist the sovereigns in making these determinations and to provide an orderly method by which to prosecute and incarcerate an individual that violated the law of more than one sovereign. Once again, the primary custody doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction. See, e.g., Bowman, 672 F.2d at 1153-54.

The BOP has incorporated the common law primary custody doctrine into its policies, which provide:

1. If the federal government has primary custody of an inmate on the date his federal sentence is imposed, it is entitled to have that inmate serve his federal sentence upon imposition. In such a case, the BOP will designate the inmate to a federal detention facility for service of the federal sentence and will calculate that sentence to have commenced on the date the federal sentencing court imposed it, even if at that same time the inmate is serving a concurrent state sentence. PS 5880.28, Chapt. 1, Pages 12-13.

2. If the inmate is in the primary custody of the state and the federal sentencing court orders that he serve his federal sentence *concurrent* with any state sentence, the BOP will return physical custody of the inmate to the state, designate the state facility as the initial place of service of the federal sentence pursuant to its authority under 18 U.S.C. § 3621(b), and calculate his federal sentence to have commenced on the date the federal court imposed it. PS 5880.28, Chapt. 1, Page 13, 32A-33; PS 5160.05, Pages 2-12.

3. If an inmate is in the primary custody of the state when his federal sentence is imposed and if his federal sentence is *consecutive* to any state sentence, the inmate will be returned to the state after federal sentencing. The BOP will commence the inmate's federal sentence under § 3585(a) when the state relinquishes its priority and releases him to federal custody. PS 5880.28, Chapt. 1, Pages 12-13, 31-33; see also PS 5160.05, Pages 2-12.

The third scenario is what has occurred in the Petitioner's case. He was in the primary custody of the Commonwealth on the date his federal sentence was imposed. Because his federal sentence is

11

consecutive to his state sentence, the BOP calculated his federal sentence to have commenced under § 3585(a) on January 28, 2016, the date the Commonwealth released him to the federal detainer. There is no basis for the Court to disturb the BOP's determination. The policies it applied to the Petitioner are a permissible construction of § 3585(a).

### 3. Calculation of prior custody credit under § 3585(b)

Section 3585(b) governs the amount of credit an inmate is entitled to receive for time served in official detention prior to the commencement of his federal sentence. It provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –
>
> (1)  as a result of the offense for which the sentence was imposed; or
>
> (2)  as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> *That has not been credited against another sentence.*

(Emphasis added).

The intent of the last clause of § 3585(b) is to prohibit double sentencing credit situations. Wilson, 503 U.S. at 337 (explaining that with the enactment of § 3585(b), "Congress made it clear that a defendant could not receive a double credit for his detention time."). The BOP may not grant prior custody credit under § 3585(b) for time that has been credited against another sentence. See, e.g., Vega v. United States, 493 F.3d 310, 314 (3d Cir. 2007).

As set forth above, the BOP gave the Petitioner credit 688 days of prior custody credit under § 3585(b) for the time he served from December 12, 2012, through December 30, 2014. The BOP cannot give the Petitioner any additional credit under § 3585(b) because that time was credited against a state sentence. See, e.g., Vega, 493 F.3d at 314 (the BOP did not err when it disallowed credit under § 3585(b) because the time at issue had been credited against the petitioner's state sentence). (Resp's

Ex. 2, ¶ 18). As with the other determinations at issue in this case, there is no basis for this Court to disturb the BOP's determination that the Petitioner is not entitled to additional prior custody credit.

## II.

Based upon all of the foregoing, the Petitioner has not demonstrated that he is entitled to a writ of habeas corpus and, therefore, his petition is denied.[6]

An appropriate Order is attached.

Dated: August 4, 2017

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

---

[6] Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000) (en banc), abrogated on other grounds by Gonzalez v. Thaler, 132 S.Ct. 641 (2012); 28 U.S.C. § 2253(c)(1)(B).

13

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES THOMPSON, | ) | |
| Petitioner, | ) | Civil Action No. 16-246 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan Paradise Baxter |
| WARDEN RECKTENWALD, | ) | |
| Respondent. | ) | |

## **ORDER**

AND NOW, this 4th day of August, 2017, IT IS HEREBY ORDERED that the petition for a writ of habeas corpus is DENIED. The Clerk of Court shall mark this case CLOSED.


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge


cc:    Notice by ECF to counsel of record and by U.S. mail the Petitioner at his address of record